1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

7  JODI ANN NIESS,

8                          Plaintiff,

9          v.

10  NANCY A. BERRYHILL,

11                          Defendant.

CASE NO. 2:17-cv-01471-RBL-BAT

**REPORT AND
RECOMMENDATION**

12      Jodi Ann Niess seeks review of the denial of her Supplemental Security Income ("SSI")

13  application.  She contends the Administrative Law Judge (ALJ) erroneously discounted the

14  opinions her examining doctors and instead, afforded great weight to the opinion of the state

15  agency psychologist who reviewed only a portion of the longitudinal record.  She further

16  contends the ALJ erred when she failed to consider a closed period of disability.  Dkt. 10.  The

17  Court agrees the ALJ harmfully erred and recommends **REVERSING** the Commissioner's final

18  decision and **REMANDING** the case for further administrative proceedings under sentence four

19  of 42 U.S.C. § 405(g).

20                                    **BACKGROUND**

21      On May 6, 2014, Ms. Niess protectively filed an application for supplemental security

22  income, alleging disability beginning January 1, 2013.  The claim was denied initially on

23  September 18, 2014, and upon reconsideration on January 2, 2015.  Tr. 19.  Thereafter, Ms.

Niess appeared and testified at a hearing held on May 17, 2016.  Tr. 36-65.  On June 24, 2016,

1   ALJ Stephanie Martz issued an unfavorable decision finding Ms. Niess was not disabled under

2   Section 1614(a)(3)(A) of the Social Security Act.  Tr. 7-29.  On July 31, 2017, the Appeals

3   Council denied Ms. Niess' request for review of the ALJ's decision.  Tr. 1-3.

4          Utilizing the five-step disability evaluation process,[1] the ALJ found Ms. Niess suffers

5   from severe impairments, each of which more than minimally affects her ability to perform

6   basic work activities, including polysubstance dependence; anxiety disorder; affective disorder;

7   and attention-deficit disorder.  Tr. 21.  The ALJ further found Ms. Niess does not have an

8   impairment or combination of impairments that meets or medically equals the severity of one of

9   the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

10         The ALJ concluded Ms. Niess has the residual functional capacity (RFC) to perform a

11   full range of work at all exertional levels but with the following non-exertional limitations: she

12   can understand, remember, and carry out simple tasks as well as routine or repetitive tasks over

13   an eight-hour workday with regular breaks; she should not work with the general public; she

14   can have occasional, superficial contact with co-workers and supervisors, but she should would

15   independently and not on team or tandem tasks; she needs a routine and predictable work

16   environment.  Tr. 23.  Relying on the testimony of a Vocational Expert (VE), the ALJ

17   concluded Ms. Niess is able to perform the requirements of a laundry worker, dietary aid, or

18   maid.  Tr. 28.

19                                    **DISCUSSION**

20   **A.     The ALJ Erred in Evaluating the Examining Doctors' Opinions**

21         In April 2014 and February 2016, respectively, Jan Kouzes, Ed.D., and William

22   Wilkinson, Ed.D., performed psychological evaluations of Ms. Niess for DSHS.  Tr. 26 (Exs. 16

23

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

1   F; 20F).  These doctors concluded Ms. Niess had multiple "moderate" and "marked" limitations

2   in her ability to perform basic work activities on an ongoing, appropriate, and independent basis.

3   *Id.*, Exs. 16F-3, 16-4; 20F-3, 20-4.  Dr. Kouzes and Dr. Wilkinson further opined that Ms. Niess

4   had "severe" limitations in various work-related abilities, including the ability to perform

5   activities within a schedule, maintain regular attendance, and be punctual within customary

6   tolerances without special supervision, and complete a normal work day/week without

7   interruptions from psychologically based symptoms.  *Id.*  Faulder Colby, Ph.D., reviewed the

8   reports from Dr. Kouzes and Dr. Wilkinson and concurred that Ms. Niess has "severe"

9   limitations in her ability to perform activities within a schedule, maintain regular attendance, and

10  be punctual within customary tolerances; ask simple questions or request assistance; and

11  maintain appropriate behavior in a work setting.  *Id.*, Ex. 21F-3.  After she evaluated Ms. Niess

12  in September 2014, Kathryn Johnson, Ph.D., opined Ms. Niess was "quite emotionally unstable"

13  at the time of the interview and was "unable to engage meaningfully in mental health treatment."

14  Tr. 27 (Ex. 9F; 9F-5).  Dr. Johnson also opined Ms. Niess retained the capacity to understand and

15  follow instructions in a work setting but that her ability to sustain relationships and appropriate

16  interactions with co-workers or the public would be problematic over time.  Dr. Johnson also

17  concluded Ms. Niess "was in a state of fairly severe distress and she would likely experience

18  frequent disruption due to her psychological symptoms."  *Id.*

19       The ALJ gave little weight to all of these opinions based on "treatment records

20  documenting that Ms. Niess' symptoms diminished with medication and engagement in

21  counseling."  Tr.  26.  Earlier in her opinion, the ALJ summarized some of these improvements:

22       Other statements of record further support that claimant's depression symptoms
         are not as limiting as claimant has alleged and that treatment improves these
23       symptoms.  Claimant reported during a September 2014 consultative examination
         that she "used to stay in bed more but now gets out of the house most days" (Ex.

REPORT AND RECOMMENDATION - 3

9F-4).  Treatment records from November 2014 and October 2015 further document that claimant was "able to get out of bed and function" with less sadness, more motivation, and more ability to focus since starting Celexa around March 2014.  (Exs. 15F-3; 19F-17).  Additionally, claimant testified that she spends her days contributing to household chores such as washing dishes, taking the dog out, and taking out the recycling as well as that she goes for walks and on short excursions to the store with others.  She further testified that she was better able to focus and handed time management better when she was on Adderall.

. . .

Even though claimant continued to report problems with sleep, treatment notes from November 2015 document that claimant was resultantly only "sometimes" unable to go to classes or fulfill other obligations and that she was not falling behind in her classes or obligations.  (Ex. 19F-18).  Treatment records from December 2015 further document claimant's continued improvement with medication and counseling, including that she was maintaining a schedule/routine and busy with college preparation classes, work, church, and tutoring.  (Ex. 19F-21).

Tr. 24.

On the other hand, the ALJ gave great weight to the opinion of a reviewing psychological consultant, Jerry Gardner, who reviewed the records in evidence only as of December 2014.  Dr. Gardner opined Ms. Niess was able to persist for task completion within tolerances for competitive employment, although sustained contact and collaboration with co-workers and the public would likely be problematic.  Tr.  27.

The ALJ is charged with evaluating the medical evidence, *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995), and is not required to accept the opinion of a doctor.  However, an ALJ may reject an examining physician's opinion only if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and

1    making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do

2    more than offer her conclusions; she must also explain why his interpretation, rather than the

3    treating doctor's interpretation, is correct. *Orn*, 495 F.3d at 632.

4    While the ALJ references evidence in the record showing periods of improvement in Ms.

5    Niess' mental status, the ALJ appears to have failed to consider evidence from the same time

6    period which indicates the improvement had only recently occurred and/or was not conclusive as

7    to whether Ms. Niess would be able to sustain her focus and ability to function in a competitive

8    work environment. For example, the ALJ relies on treatment records from December 2015, but

9    just one month prior, in November 2015, Ms. Niess was still having days when she could not go

10   to classes or fulfill other obligations. Moreover, on December 22, 2015, a treatment note

11   indicates Ms. Niess was "not able to connect the dots in terms of how her thoughts affect her

12   behavior nor does she have a sense of how she can have control over her thoughts and feelings."

13   Tr. 806 (Ex. 19F at 20). Then, on March 15, 2016, a treatment note from a new facility indicates

14   that Ms. Niess had decompensated again and is "unemployed and homeless," with no mention

15   that she was able to continue with her attempt at entering educational classes. Tr. 829 (Ex. 22F

16   at 4).

17   "Occasional symptom-free periods […] are not inconsistent with disability," and

18   "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such

19   circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a

20   period of months or years and to treat them as a basis for concluding a claimant is capable of

21   working." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ refers treatment

22   notes from November and December 2015 indicating that Ms. Niess was responding to

23   medication and attending counseling and classes. However, the ALJ does not explain how these

1   treatment notes—which appear later in the record – contradict or undermine the opinions of

2   every examining doctor that Ms. Niess was not able to sustain activity sufficiently to sustain

3   employment, particularly when the notes postdate the doctors' examinations.  The ALJ also fails

4   to consider treatment notes from the same period of time showing that Ms. Niess was still

5   missing class and other obligations (Tr. 24, citing Tr. 804), and shortly after this period of

6   improvement, decompensated.  Tr. 829 (Ex. 22F at 4).

7          The ALJ also refers to Ms. Niess' improved abilities to get out of bed and out of the

8   house more often and function with less sadness with medication, to wash dishes, walk the dog,

9   take out the recycling, and go for walks and short excursions to the store.  Tr. 24.  However, the

10  Social Security Act does not require claimants to be "utterly incapacitated" before they are

11  eligible for benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "Many home activities

12  are not easily transferable to . . . the more grueling environment of the workplace, where it might

13  be impossible to periodically rest or take medication." *Id.*  The ALJ offered no rationale for

14  concluding that any of these activities were inconsistent with the opinions of the examining

15  medical providers of record that Ms. Niess was unable to sustain full time competitive

16  employment.  In fact, there is no showing of a connection between any of Ms. Niess' activities or

17  combination of activities and her ability to function at that level of sustained activity even during

18  the short period of her improved functioning.

19         The ALJ failed to provide specific and legitimate reasons for giving little weight to the

20  opinions of Drs. Kouzes, Wilkinson, Colby, and Johnson.  In positing that Ms. Niess would not

21  have frequent disruptions by her symptoms, the ALJ improperly substituted her opinion for that

22  of the four examining doctors.  This was error as the ALJ must set forth her own interpretations

23  and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418,

421-22 (9th Cir.1988).  The ALJ also concluded that these limitations were inconsistent with Ms. Niess' mental status examinations which were "within normal limits or only somewhat low" when she was examined.  Tr. 26.  However, the ALJ did not cite to any specific examination or explain why the "normal limits" findings undercut the stated limitations of any of the four doctors.

In sum, the Court concludes the ALJ erred in giving minimal weight to the opinions of Drs. Kouzes, Wilkinson, Colby, and Johnson that Ms. Niess was markedly or severely limited in her ability to perform basic work activities within a schedule, to maintain regular attendance, be punctual within customary tolerances without special supervision, and to complete a normal work day/week without interruptions from psychologically based symptoms.  These were not harmless errors as the limitations were not appropriately reflected in the ALJ's determination of Ms. Niess' RFC.

The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  *See* SSR 96-8p.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  The validity of the ALJ's RFC determination is predicated upon whether the ALJ properly assessed all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work.  Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)).  Here, the ALJ erred when she failed to mention or discuss all limitations found by Ms. Niess' examining doctors and failed to include all those limitations in

1    questioning the VE.   This was not harmless error as the VE testified that a person who is

2    deficient by 15 or more percent could not sustain employment and if a person needed to be told

3    to get back to work every day or more than once per day, the employer is going to have to let that

4    person go.  Tr. 63.

5    **B.        The ALJ Erred in Evaluating the Decision of Dr. Gardner**

6            The ALJ gave great weight to the opinion of Dr. Gardner who reviewed the records only

7    as of December 2014.  Tr. 27.  Based on this limited review, Dr. Gardner concluded Ms. Niess is

8    "able to learn and complete simple and complex tasks, as well as persist for task completion

9    within the tolerances of competitive employment."  Tr. 27 (Ex. 4A-9).  The ALJ concluded Dr.

10   Gardner's opinion was "consistent with the overall record establishing that claimant's depression

11   and anxiety symptoms significantly improve with treatment and that, even with symptoms,

12   claimant is able to carry out simple tasks."  Tr. 27.

13           It is worth repeating here that Ms. Niess' application date is May 6, 2014 and the

14   longitudinal record extends to the end of March, 2016.  Dr. Gardner reviewed records only up to

15   December 2014.  Thus, Dr. Gardner did not have access to the opinions of Drs. Kouzes and

16   Wilkinson, who both opined that Ms. Niess would have marked limitations in her ability to

17   perform work activities on an ongoing, appropriate, and independent basis, as well as severe

18   limitations in various work-related abilities.  Tr. 26.  Nor did Dr. Gardner have access to the

19   opinion of Dr. Colby who concurred with Drs. Kouzes and Wilkinson.  Nor did Dr. Gardner have

20   access to those treatment notes on which the ALJ relied for her conclusion that Ms. Niess'

21   "depression and anxiety symptoms significantly improve with treatment and that, even with

22   symptoms, [she] is able to carry out simple tasks."  Tr. 27.

23

1      The ALJ's stated reason for rejecting the examining medical professionals' opinions was

2   that the medical records showed that Ms. Niess' condition had improved over time but Dr.

3   Gardner did not have access to those medical records.  All of Ms. Niess' treating and examining

4   providers agreed that her ability to sustain gainful employment during that period of time was

5   severely limited and there is no evidence in the record at the time Dr. Gardiner's opinion was

6   rendered to support a conclusion to the contrary.  The Commissioner argues that even though Dr.

7   Gardner's opinion was based on only a small portion of Ms. Niess' record, the ALJ had access to

8   the entire record and was therefore, entitled to draw this conclusion.  However, as previously

9   explained, the ALJ erred in her analysis of the medical evidence.  And, even if there was a period

10  of improvement with medication, it appears to have been short-lived and there is no indication

11  that the improvement in functioning was such that it allowed Ms. Niess to sustain employment

12  on a regular and continuing basis.  *See* Tr. 829.  Thus, it was error for the ALJ to give great

13  weight to an opinion that was not consistent with the overall record.

14  **C.      Scope of Remand**

15      Where the ALJ has committed reversible error, the Court has the discretion to remand for

16  further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

17  1990).  Only in rare circumstances should a case be remanded for benefits.  *See Treichler v.*

18  *Colvin*, 775 F3d 1090, 1099 (9th Cir. 2014).  The Court may remand for an award of benefits

19  where "the record has been fully developed and further administrative proceedings would serve

20  no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*

21  *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  If additional proceedings can remedy defects in

22  the original administrative proceedings, a social security case should be remanded for further

23  proceedings.  *McCartey*, 298 F.3d at 1076.

1    Here, additional proceedings are required to allow the ALJ to properly assess all

2  limitations found by Ms. Niess' examining mental health providers in determining Ms. Niess'

3  RFC.

4                                      **CONCLUSION**

5    For the reasons above, the Court recommends the Commissioner's final decision be

6  **REVERSED** and the case be **REMANDED** for further administrative proceedings under

7  sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should be directed to reassess the

8  opinions of Drs. Kouzes, Wilkinson, Colby, and Johnson, assess Ms. Niess' RFC, and proceed to

9  steps four and five.

10    A proposed order accompanies this Report and Recommendation.  Any objection to this

11  Report and Recommendation must be filed and served no later than **April 16, 2018**.  If no

12  objections are filed, the Clerk shall note the matter for **April 20, 2018,** as ready for the Court's

13  consideration.  If objections are filed, any response is due within 14 days after being served with

14  the objections.  A party filing an objection must note the matter for the Court's consideration 14

15  days from the date the objection is filed and served.  Objections and responses shall not exceed

16  ten pages.  The failure to timely object may affect the right to appeal.

17    DATED this 2nd day of April, 2018.

18

19    _____

20    BRIAN A. TSUCHIDA
      United States Magistrate Judge

21

22

23

REPORT AND RECOMMENDATION - 10